681 So.2d 1287 (1996)
STATE of Louisiana
v.
Alvis CURTIS.
No. 96-K-1408.
Court of Appeal of Louisiana, Fourth Circuit.
October 2, 1996.
*1288 Harry F. Connick, District Attorney, Allison L. Monahan, Assistant District Attorney, Seth Rutman, Law Clerk, New Orleans, for the State.
Before BARRY, BYRNES and MURRAY, JJ.
BYRNES, Judge.
We grant the State's writ application requesting a review of the trial court's ruling granting the defendant Alvis Curtis' motion to suppress evidence. We reverse and remand.
Sergeant Bruce Little received information from a reliable confidential informant who stated that two black males were trafficking in heroin in front of Bernell's Grocery Store, at the intersection of Gibson and Sere Streets in the St. Bernard Housing Development in New Orleans. The informant specifically described the clothing worn by both men, their physical appearance, and their approximate ages. The informant also said that one individual, later identified as the defendant, would hold the heroin and the other individual would hold the money.
Based on this information, Sergeant Little along with Officers Mayberry, Fitzpatrick, Green and Bush approached the intersection of Gibson and Sere Streets from different directions. As they approached the intersection, they saw two individuals who "exactly matched" the descriptions furnished by the informant. Officer Mayfield testified that the two men began to walk away when the officers approached, but they were stopped by the officers and told to place their hands against the exterior wall of the building. Officer Green recognized the defendant as the person he had previously arrested for a heroin offense. As the suspects had their hands against the wall, the defendant attempted to reach toward the lower part of his right leg. Officer Fitzpatrick prevented the defendant from reaching his leg, then patted him down and felt a "bulge in the sock area of his right leg." Officer Fitzpatrick retrieved a cigarette pack which had been ripped open and saw a white paper inside of which were tin foil packets. The packets contained a white powder, which the officers believed was heroin. The defendant was then arrested and *1289 transported to the police station where he gave an incriminating statement.
The defendant, Alvis Curtis, was charged by bill of information on April 17, 1995, with possession of heroin, a violation of La. R.S. 40:966. Mr. Curtis entered a plea of not guilty on April 28, 1995. On May 3, 1996, a bench trial began and the minute entry indicates that the defendant reurged his request to suppress evidence, after the attorneys' arguments.[1] The trial court granted the defendant's motion to suppress the evidence, finding that the officers did not have reasonable suspicion to justify the stop of the defendant and were not justified in patting him down. The State's writ application followed.
A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. Art. 215.1. If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B).
"Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819. In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir. 1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.1993), writ denied, 626 So.2d 1177 (La. 1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir.1994), 641 So.2d 1081. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir. 1991), writ denied, 578 So.2d 131 (La.1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992), State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990). In State v. Thornton, 611 So.2d 732 (La.App. 4 Cir.1992), conduct constituting the charge of illegally carrying a gun in violation of La. R.S. 14:95, was based on the defendant's having concealed it in his pocket. In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the United States Supreme Court held that an anonymous tip, corroborated by police surveillance, could supply enough reliability to support an investigatory stop. See also State v. Morales, 583 So.2d 129 (La.App. 4 Cir. 1991).
In State v. Ricard, 94-0975 (La.App. 4 Cir. 7/14/94), 640 So.2d 880, in a high crime area the defendant appeared to be intoxicated and ignored the officers' order to stop. The defendant clenched his hand and attempted to put it into his coat pocket. Believing that the defendant was reaching for a gun, the officer grabbed the defendant's hand and opened it, finding a cocaine pipe. This court found that the officers articulated specific *1290 reasons for suspecting that the defendant had a weapon, and the evidence was legally seized.
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The defendant saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.
State v. Ganier, 591 So.2d at 1330.
In State v. Hall, 581 So.2d 337 (La.App. 3 Cir.1991), in a high crime area at approximately 4:00 a.m. an officer observed three subjects standing on a corner. As he was alone, the officer began to pat down the subjects before conducting interviews "pretty much agreed to" by the three subjects. As the officer started to pat down one person, he noticed that a female subject kept placing her hand in her left pocket and was "sort of evading him" by stepping away. The officer patted down the female, checking for a gun. When he felt a sharp object in her pocket, he retrieved four hypodermic needles, and arrested the female. The appellate court found that the stop and frisk were justified based on the reasonable suspicion that the defendant was reaching for a weapon. Under La.C.Cr.P. art. 215.1, the officer was authorized to stop and frisk the defendant based on the high crime area, the defendant's evasive conduct, and her reaching into her pocket possibly to retrieve an unknown object. The evidence was properly seized.
In State v. Parker, 94-0624 (La.App. 4 Cir. 11/8/94) 645 So.2d 1309, writ denied 94-3042 (La.9/15/95), 660 So.2d 446, a citizen who would not give his name told police, who were on routine patrol in a high drug trafficking area, that a black male wearing a white T-shirt and purple pants with the letters LSU on the side and riding a bicycle was selling drugs. The officers proceeded to the corner and found the defendant meeting the citizen's description. They called him over and he approached them with a clenched fist. They asked him to open his fist and found that he was carrying a plastic bag of rocks which later proved to be crack cocaine. On appeal, this Court affirmed the trial court's refusal to suppress the evidence, noting:
Having legitimately stopped the defendant whom they were just told moments before was selling drugs they saw that his fist is clenched. Common sense dictated that he was holding the merchandise he was selling in the clenched fist. Defendant had no expectation of privacy in his clenched fist under these circumstances. In addition since the clenched fist in all probability held drugs the situation was analogous to the drugs being in the plain view of the officers.
In State v. Massey, 529 So.2d 139 (La.App. 4 Cir.1988), officers were flagged down by an unknown female who reported someone selling drugs at a particular location in the St. Thomas Housing Projects. The officers found the defendant standing in the street and leaning into a stopped car. The defendant then backed away and discarded two tinfoil packets containing cocaine. The detailed description given by the unknown female in Massey was thus corroborated when the officers saw the suspect leaning into a stopped car, consistent with the sale of drugs.
Once an officer has reasonable suspicion to detain a suspect, paragraph B of C.Cr.P. art. 215.1 provides:
When a law enforcement officer has stopped a person for questioning pursuant *1291 to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
It is clear that an officer may make a protective search of the suspect for his own safety and the safety of others. State v. Davis, 92-1623 (La.1994), 637 So.2d 1012, cert. denied, Davis v. Louisiana, ___ U.S. ___, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
In State v. Parker, 622 So.2d 791 (La.App. 4 Cir.), writ denied, 627 So.2d 660 (La.1993), this court upheld the right of the police officer to frisk a suspect following an investigatory stop. The court stated:
Defendant was in a high crime area known for drug deals, the officers had received information that the Mitchells were engaged in selling drugs ... when the suspects saw the officers drive up, they acted `fidgety' to the extent that many of them ran away ... defendant was extremely close to the vehicle [from which drugs were being sold], and that they [the officers] did not search the defendant until after they found drugs on the Mitchells and defendant attempted to leave the scene. The officers were justified in conducting a pat down search of the defendant for weapons.

Parker, 622 So.2d at 795.
In State v. Wartberg, 586 So.2d 627 (La. App. 4 Cir.1991), this court noted that any person who is suspected of dealing drugs is probably armed with a weapon and officers need not refer to specific particular facts concerning the danger to their safety.
The seizure may be warranted under the limited "plain feel" exception to the warrant requirement recognized by the United States Supreme Court in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The Supreme Court ruled that officers may seize contraband detected by touch during a pat-down search if the search remains within the bounds of a Terry pat-down search. The Supreme Court stated:
We have already held that police officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] search.... Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. See Horton v. California, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 2307-2308, 110 L.Ed.2d 112 (1990); Texas v. Brown, 460 U.S. 730, 739, 103 S.Ct. 1535, 1541-1542, 75 L.Ed.2d 502 (1983) (plurality opinion). If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the objecti.e. if "its incrimination character [is not] immediately apparent," Horton, supra, at 136, 110 S.Ct. at 2308the plain view doctrine cannot justify its seizure. Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).
We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy
and thus no "search" within the meaning of the Fourth Amendmentor at least no search independent of the initial intrusion that gave the officers their vantage point.... The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context. *1292 Minnesota v. Dickerson, 508 U.S. at 374-375, 113 S.Ct. at 2136-2137.
Prerequisites for a legitimate plain view seizure are prior justification for police intrusion into the protected area and that it was immediately apparent, without close inspection, that the items were contraband; "immediately apparent" in this context means only that the officer must have probable cause to believe an item is contraband. State v. Jones, 93-1685 (La.App. 4 Cir. 7/27/94), 641 So.2d 688. The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir.1988), writ denied 530 So.2d 83 (La.1988).
The officers received information from a reliable, confidential informant. That information was corroborated which established reasonable suspicion to justify a detention of the two men.
Common sense dictates that a police officer should be permitted to pat-down a suspect who reasonably appears to be dealing drugs. We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop (based on reasonable suspicion) relating to drug activities. The police officers acted reasonably on information which proved accurate.
The standards for an investigatory stop and pat-down for weapons, which are set forth in Article 215.1 A and B of the Code of Criminal Procedure, are clearly met in the present case. Because the defendant and his companion matched the descriptions of drug dealers at the specific location given by a reliable informant, the police reasonably suspected that the defendant was involved in criminal activity and that he could be armed. Additionally, Mr. Curtis' attempt to reach his lower right leg justified Officer Fitzpatrick's investigation of the bulge in that sock, which revealed that something other than cigarettes was visible inside the open cigarette package. Under the totality of circumstances, the officer had probable cause to believe that the paper inside the package was concealing contraband, thus justifying the seizure of the contents.
Accordingly, the trial court's ruling is reversed, and the defendant's motion to suppress the evidence is denied. The case is remanded for further proceedings.
WRIT GRANTED; REVERSED & REMANDED.
NOTES
[1] Although the minutes of May 3, 1996 state that the attorneys made closing arguments and then the defense reurged its request to suppress the evidence, according to the transcript, the hearing of the motion was held after opening arguments.