772 So.2d 231 (2000)
STATE of Louisiana
v.
Iles M. LEWIS.
Nos. 99-KA-2730, 99-KA-2731.
Court of Appeal of Louisiana, Fourth Circuit.
October 18, 2000.
Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, Counsel for Defendant/Appellant.
Court composed of Judge CHARLES R. JONES, Judge MIRIAM G. WALTZER and Judge PATRICIA RIVET MURRAY.
WALTZER, Judge.

STATEMENT OF THE CASE
On 5 April 1999, appellant Iles Lewis was charged by bill of information with possession of cocaine, 28 or more grams but less than 200 grams, a violation of La. R.S. 40:967. On 7 April 1999, he was *232 charged with simple escape, a violation of La. R.S. 14:110, arising out of the same occurrence as the drug charge. After a hearing on 17 May 1999, the district court denied the appellant's motion to suppress evidence. On 4 August 1999, the appellant tendered a plea, under State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appellate review of the ruling on his motion to suppress. The court sentenced the appellant on the possession count to thirteen years at hard labor without benefit of probation, parole or suspension of sentence, and on the simple escape count to two years at hard labor, to run consecutively with the other sentence.
Having found that the trial court erred in denying appellant's motion to suppress, we vacate the conviction and sentence and remand for further proceedings consistent with this opinion.

STATEMENT OF THE FACTS[1]
Following complaints that non-residents were coming into the Iberville housing development to sell illegal drugs, Officers Desmond Anthony Pratt and his partner, Officer Marcellus White, patrolled the area, walking toward Lake Pontchartrain looking for violators in the "hot spot" area of the 1500 block of Bienville Street. They observed appellant and another subject walking in the direction of the Mississippi River. The officers were familiar with the neighborhood and knew that neither subject resided there. Officer Pratt noted that, when the appellant observed the officers walking towards him, he looked nervous.
As the officers continued walking towards them, the subjects separated. Officer Pratt stepped in front of the appellant, and Officer White stepped in front of the other subject. The officers asked the subjects if they needed any help, or could explain their reasons for being there. Officer White asked one of the subjects for identification. At that point, the appellant ran away.
Officer Pratt immediately requested air clearance over the police radio and assistance as he chased the appellant, while Officer White detained the other subject. From about ten feet away, Officer Pratt observed appellant remove something from his waistband and drop it into a storm drain. Officer Pratt immediately radioed the location of the drop. He and other officers apprehended the appellant about two blocks away.
When Officer Pratt returned to the location of the drop, a police unit was waiting. Officers from this unit lifted the cover off of the non-functioning drain to reveal two plastic bags of white rock-like substances. The appellant was then placed under arrest for possession of cocaine. The weight of the cocaine was determined to be 30.7 grams.
Defense counsel advised the court that he had no questions relative to the escape charge, so no additional testimony was taken on the facts of that offense.

ERRORS PATENT
A review of the record for errors patent indicates that the sentence imposed by the trial judge on the drug charge is illegally lenient. La. R.S. 40:967 F(1)(a) provides that the offender shall be imprisoned for ten to sixty years and fined fifty thousand to one hundred fifty thousand dollars. The trial court did not impose the mandatory fine, but specifically declined to waive the fine. The State failed to object to this omission, either at the sentencing or on appeal. An error patent which is favorable to the defendant and not raised by the State may not be corrected on appeal. State v. Gervais, 546 So.2d 215 (La.App. 4 Cir.1989). Accordingly, this court may not correct the error.

ANALYSIS
The appellant argues that the trial court erred in denying his motion to suppress *233 evidence because the police officers had no reasonable cause to stop him.
This Court did an extensive analysis of the doctrine of reasonable suspicion in State v. Curtis, 96-1408 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287. In that case, the police received information from a reliable confidential informant that two black males were trafficking in heroin in a housing project. The informant specifically described the clothing worn by both men, their physical appearance, and their approximate ages. The informant also said that one individual, later identified as the defendant, would hold the heroin and the other individual would hold the money. Based on this information, officers approached the location from different directions. As they approached the intersection, they saw two individuals who "exactly matched" the descriptions furnished by the informant. The two men began to walk away when the officers approached, but they were stopped by the officers and told to place their hands against the exterior wall of the building. One officer recognized the defendant as a person he had previously arrested for a heroin offense. As the suspects had their hands against the wall, the defendant attempted to reach toward the lower part of his right leg. One officer prevented the defendant from reaching his leg, then patted him down and felt a "bulge in the sock area of his right leg ." The officer retrieved a cigarette pack which had been ripped open and saw a white paper inside of which were tin foil packets. The packets contained a white powder, which the officers believed was heroin. The defendant was then arrested. The trial court granted the defendant's motion to suppress the evidence, finding that the officers did not have reasonable suspicion to justify the stop of the defendant and were not justified in patting him down. The State applied for writs to this court which were granted, and the denial was reversed with this Court stating:
A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. art. 215.1. If an officer stops a person pursuant to Art. 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B).
"Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868 State v. Vance, 93-1389 (La. App. 4 Cir. 2/25/94), 633 So.2d 819. In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir. 1993), writ denied, 626 So.2d 1177 (La. 1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir. 1994), 641 So.2d 1081. The reputation of an area is an articulable fact upon which an officer can rely and which is *234 relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir.1991), writ denied, 578 So.2d 131 (La.1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992), State v. Preston, 569 So.2d 50 (La.App. 4 Cir. 1990).... In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the United States Supreme Court held that an anonymous tip, corroborated by police surveillance, could supply enough reliability to support an investigatory stop. See also State v. Morales, 583 So.2d 129 (La.App. 4 Cir. 1991).
Curtis, 96-1408, pp. 2-4, 681 So.2d at 1289.
More recently, the Louisiana Supreme Court found no reasonable suspicion in State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268. In that case, an officer received an anonymous phone call from a concerned citizen. The caller said that "Will" drove a dark green Pontiac Grand Am with dark tinted windows and was involved in the narcotics trade in the Magnolia Project. The caller gave a description of the defendant and said where the car was parked when not being used to deliver drugs. The officers went to the location and saw the car. While they were setting up a surveillance, they observed the vehicle drive away. When the car parked, the driver exited and matched the given description. The officers approached and asked the defendant his name, and he responded William Robertson. The officer informed him that he was under investigation for narcotics. A canine unit arrived at the scene ten to fifteen minutes later. When the dog found the drugs, the defendant was arrested. This court denied writs. State v. Robertson, 97-1950 (La.App. 4 Cir. 11/5/97), 701 So.2d 272, unpub. The Supreme Court reversed:
In the instant case, it is true that the officers were able to corroborate certain aspects of the anonymous tip, including defendant's name, his physical description and the location of the described vehicle. The tip, however, contained no predictive information from which the officers could reasonably determine that the informant had "inside information" or a "special familiarity" with defendant's affairs. In particular, the tip failed to predict the specific time period in which defendant would be engaged in illegal activity. It simply stated that drugs would be in the vehicle when not parked at a certain location. Because it is likely that defendant's use of the vehicle included non-illegal activity, the allegation that defendant would be engaged in illegal activity whenever the vehicle was moving was far too general. Since the tip did not provide sufficiently particular information concerning defendant's future actions, an important basis for forming reasonable suspicion was absent. The officers, therefore, lacked reasonable grounds to believe that the informant possessed reliable information about defendant's alleged illegal activities.
We note that the police were not powerless to act on the non-predictive anonymous tip they received. The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating the readily observable facts, the officers had noticed unusual or suspicious conduct on defendant's part, they would have had reasonable suspicion to detain him. These circumstances, however, were not present here. In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant's allegation of criminal activity was reliable, we must conclude that there was *235 no reasonable suspicion to detain defendant. The trial judge erred in holding otherwise.
Robertson, 97-2960, pp. 5-6, 721 So.2d at 1270-71.
Recently, the U.S. Supreme Court revisited the issue. In Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), an anonymous caller reported that a young black male wearing a plaid shirt was standing at a particular bus stop carrying a gun. Officers arrived and saw three black males at the bus stop. The defendant was wearing a plaid shirt. The officers did not see a firearm, and the defendant made no threatening or unusual movements. One officer approached the defendant, told him to put his hands on top of the bus stop, frisked him, and seized a gun. The Court specifically held that when an anonymous caller provides no predictive information and therefore leaves the police with no means to test the informant's knowledge or credibility, reasonable suspicion is not established.
The instant case is readily to be distinguished from Curtis. The officers who stopped appellant had not received information from a reliable confidential informant. They had no description of the men's clothing, physical appearances or approximate ages. They lacked identification of which subject would hold the money and which the drugs. Neither officer recognized either subject as a prior drug arrestee. The complaining citizens advised merely that non-residents were dealing drugs in the housing project.
In finding reasonable suspicion in this case, the trial court in effect reduced "reasonable suspicion" to an almost meaningless standard. Following the trial judge's apparent but unarticulated reasoning, the police would have reasonable suspicion to stop a citizen any time an untested informant calls to report that a group of persons are standing together in a housing project, facts available to the general public, if one of the subjects appears nervous upon seeing the officers approach. The citizen complaints were not predictive and were not corroborated. The officers were not powerless in the situation and could have set up a surveillance to provide reasonable suspicion or even probable cause. Considering the recent U.S. Supreme Court mandate in J.L., this assignment of error has merit.

CONCLUSION
For the foregoing reasons, we reverse the trial court's denial of the motion to suppress evidence, vacate the convictions and sentences, and remand for further proceedings consistent with this opinion.
CONVICTION AND SENTENCE VACATED. CASE REMANDED.
MURRAY, J., CONCURS WITH REASONS.
MURRAY, J., concurs with reasons.
Because the police officers' testimony clearly establishes that the evidence in this case was seized as a result of an illegal detention, I respectfully concur in the reversal of Mr. Lewis' convictions.
The arresting officers admitted that the sole reason they approached Mr. Lewis and his companion, on a public sidewalk on a weekday afternoon, was because they did not recognize the men as residents of the housing project. While there had been generalized complaints about drug sales by "outsiders," the policemen testified that neither of these men engaged in any conduct suggestive of any illegal activity; at most, Officer Pratt considered them to "look nervous." Nevertheless, according to their testimony, the officers did not merely ask if the men needed assistance, but instead, asked for their names and demanded that the two present identification. More significantly, Officer Pratt admitted that at that point, the officers did not consider the men free to leave without explaining their presence in the neighborhood. This evidence thus demonstrates that, prior to his flight and the subsequent abandonment of the contraband, Mr. Lewis *236 had been detained without any suspicion of past, present, or future criminal activity, as required by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and by Article 215.1 A of the Code of Criminal Procedure.
Accordingly, I agree with the majority's conclusion that the trial court erred in denying Mr. Lewis' motion to suppress the evidence seized subsequent to his illegal detention.
NOTES
[1] The facts are taken from the testimony of New Orleans Police Officers Desmond Anthony Pratt and Marcellus White at the hearing on the motion to suppress evidence.