815 So.2d 818 (2002)
STATE of Louisiana
v.
Iles M. LEWIS.
No. 2000-K-3136.
Supreme Court of Louisiana.
April 26, 2002.
*819 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Valentin M. Solino, Julie C. Tizzard, for Applicant.
Christopher A. Aberle, Mandeville, for Respondent.
PER CURIAM.
With all three members of the panel concurring that the police had stopped respondent without reasonable suspicion to conduct an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and La.C.Cr.P. art. 215.1, the court of appeal reversed respondent's convictions and sentences for possession of a specified amount of cocaine in violation of La.R.S. 40:967(F), and simple escape in violation of La.R.S. 14:110(A), on grounds that the trial court had erred by denying his motion to suppress the evidence. State v. Lewis, 99-2730, p. 7 (La. App. 4th Cir.10/18/00), 772 So.2d 231, 235 ("Following the trial judge's apparent but unarticulated reasoning, the police would have reasonable suspicion to stop a citizen any time an untested informant calls to report that a group of people are standing together in a housing project ... if one of the subjects appears nervous upon seeing the officers approach."). We granted the state's application to reverse that decision because the court of appeal simply misread the trial court's ruling, which found properly, not that the police had reasonable suspicion to stop respondent, but that the officers had not forcibly detained respondent before he turned and fled, discarding his packet of cocaine in the ensuing foot chase with the arresting officer.[1]
Testimony presented at the hearing on the motion to suppress revealed that following *820 complaints of residents in the Iberville Housing Development that trespassers were selling drugs within the development, New Orleans Police Officers Pratt and White patrolled the area and walked into a "hot spot" in the 1500 bock of Bienville Street, where Pratt had made "lots of drug arrests." Respondent and a companion approached the uniformed officers from the opposite direction. Although Pratt had spent nearly three years patrolling the Iberville Development and made it his business to know everyone in the area, he did not recognize either respondent or his companion. Pratt also noted that when respondent observed the officers walking toward him he appeared "very nervous" and then separated from his companion. Officer Pratt stepped in front of respondent and Officer White stepped in front of the other person. According to Pratt, the officers "were just asking for basic [information] their whereaboutsif they needed any helptheir reason[] to be in the Iberville housing development." They had just started the inquiries when Officer White asked respondent for identification. Respondent gave "a little hesitant step" and started running. Officer Pratt pursued him and closed to within 10 feet when respondent went to his waistband, withdrew a plastic bag, threw it into a sewer drain, and kept running. Pratt apprehended him two blocks away and then returned to the drain, where he recovered the plastic bag containing several rocks of cocaine. He then arrested respondent for possession of cocaine.
Under these circumstances, the trial court correctly determined that while Officers Pratt and White were about to conduct a full Terry stop, respondent "ran prior to them doing that and then ... the evidence [was] discarded. I think they have the right to approach him...." It is settled that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen...." Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)(White, J.); see also Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1981)("[T]he proposition that police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions.... is by no means novel; it has been endorsed by the Court any number of times.") (citations omitted). An officer's request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority indicating to the person that he or she is not free to leave. Royer, 460 U.S. at 501, 103 S.Ct. at 1326; see also I.N.S. v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984)("[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure."); 4 Wayne R. LaFave, Search and Seizure, § 9.3(a), pp. 100-101 (3rd ed. 1996)("The critical factor is whether the policeman, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner which would be perceived as a nonoffensive contact if it occurred between two ordinary citizens.") (footnotes omitted).
When the police lack reasonable suspicion to detain an individual by force or by submission to a show of official authority, see California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the individual "need not answer any question put to him; indeed, he may decline *821 to listen to the questions at all and may go on his way." Royer, 460 U.S. at 498, 103 S.Ct. at 1324. However, the decision in Illinois v. Wardlow, 528 U.S. 119, 124-25, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), makes clear that flight is not the equivalent of a mere refusal to cooperate for purposes of the Fourth Amendment:
Headlong flightwhenever it occursis the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists....
Such a holding is entirely consistent with our decision in [Royer], where we held that when an officer without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. And any `refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.' [Bostick, 501 U.S. at 437, 111 S.Ct. at 2387]. But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not `going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.
In the present case, with or without reasonable suspicion, Officers Pratt and White had the right to approach respondent and his companion and to ask them a few questions. Officer White's request for identification without any greater show of authority did not transform the encounter into a forcible detention and did not "provoke" respondent to flight. Even assuming that the foot chase initiated by Officer Pratt when respondent turned and ran signaled that an "imminent actual stop" was about to occur, see State v. Tucker, 626 So.2d 707, 712-13 (La.1993), the totality of the circumstances known to the officer at the time, including the residents' complaints of drug activity, the "hot spot" nature of the area, respondent's nervousness, and, most importantly, his unprovoked headlong flight from the officer, gave rise to reasonable suspicion for an investigatory detention.
The decision of the court of appeal is therefore reversed, the ruling of the trial court on the motion to suppress is reinstated, as are respondent's convictions and sentences by way of guilty pleas premised on review of the suppression issue, see State v. Crosby, 338 So.2d 584 (La.1976), and this case is remanded to the district court for execution of sentence.
DECISION OF THE COURT OF APPEAL REVERSED; JUDGMENT OF THE DISTRICT COURT REINSTATED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED.
JOHNSON, J., dissents.
NOTES
[1] Although clearly of the opinion that the officers had not detained respondent before he turned and ran from them, the trial court nevertheless accepted respondent's guilty plea under a separate bill of information charging him with "simple escape from the lawful custody" of named police officers, in violation of La.R.S. 14:110(A)(1), at the same time that it accepted respondent's guilty plea to possession of cocaine in the amount of 28 grams or more. The date of the offense listed on the bill of information corresponds to the date on which the police officers recovered the cocaine giving rise to the present suppression issue. Respondent entered a guilty plea to the offense of simple escape as part of a plea bargain in which he agreed to a total sentence of 15 years imprisonment at hard labor and the state agreed not to file an habitual offender bill under La.R.S. 15:529.1. The state did not articulate a factual basis for either charge at the plea colloquy conducted on August 4, 1999, and it remains unclear on the present record whether the simple escape charge involved the same conduct which prompted the officers to react with reasonable suspicion or conduct which subsequently occurred. For present purposes, only the suppression issue is before this Court, not the validity of respondent's guilty pleas.