852 So.2d 463 (2003)
STATE of Louisiana
v.
James MALVEAUX.
No. 03-276.
Court of Appeal of Louisiana, Third Circuit.
June 4, 2003.
*465 Robert Richard Bryant, Jr., District Attorney, Carla S. Sigler, Assistant District Attorney, Lake Charles, LA, for State of Louisiana.
Edward K. Bauman, Louisiana Appellate Project, Lake Charles, LA, for Defendant/Appellant, James Malveaux.
Court composed of BILLIE COLOMBARO WOODARD, JIMMIE C. PETERS, and MICHAEL G. SULLIVAN, Judges.
SULLIVAN, Judge.
Defendant, James Malveaux, was charged by bill of information with possession of CDS Schedule II, a violation of La.R.S. 40:967(C), and obstruction of a public passage, a violation of La.R.S. 14:100.1. After the trial court denied Defendant's motion to suppress, Defendant entered a Crosby plea to the charge of possession of CDS Schedule II, and the charge of simple obstruction of public passage was dismissed. The trial court sentenced Defendant to two years supervised probation with special conditions.

Facts
At the hearing on the motion to suppress, Corporal Jason Johnson and Corporal Albert Hooper described the events that led to Defendant's arrest. At 1:30 p.m. on October 6, 2001, the two officers observed Defendant walking in the middle of Martha Street on the north side of Lake Charles, Louisiana. As the officers exited their vehicle to speak with him, they noticed that he appeared to clutch something in his left hand. When they asked him to step toward the patrol car and state his name and address, Defendant turned, pointed in the direction of a Martha Street residence, and "took off running" toward the residence. The officers chased him into the backyard of the residence, where he attempted to leap over a fence. During the struggle that ensued as Defendant fell to the ground, Defendant attempted to put his left hand into the left pocket of his pants. After the officers handcuffed Defendant, *466 they brought him to his feet and conducted a pat down search. As they reached into his left pocket, they found what they believed to be crack cocaine. They then placed Defendant under arrest for obstructing a public passage and possession of crack cocaine.
The substance found in Defendant's pocket was described as "small fragments" in a supplemental offense report. In his testimony at the preliminary examination, Corporal Johnson described it as "particles." Lab results indicated that the material found was cocaine based.

Assignment of Error
In his sole assignment of error, Defendant argues that the trial court erred in denying his motion to suppress. Defendant argues that the State failed to establish reasonable cause necessary for an investigatory stop, as the evidence did not establish that he was obstructing the roadway. He also contends that, even if the officers conducted a lawful investigatory stop, they had no reason to suspect that their safety or the safety of others was in danger. Hence, the search was unlawful, and any evidence seized should have been suppressed.
In denying Defendant's motion to suppress, the trial court stated:
After consideration of the evidence adduced and the applicable law, it is found that the officers had sufficient probable cause to stop the defendant. The defendant's subsequent actions further enhanced the probable cause and the "pat down" of the defendant. Based on the totality of the circumstances, a search was appropriate not only for officer safety, but because the officers would have been justified in arresting the defendant. The contraband inevitably would have been discovered in a search incident to arrest.
In State v. Thomas, 02-471, p. 3 (La. App. 3 Cir. 10/30/02), 829 So.2d 1137, 1139-1140 (citations omitted), this court explained:
When reviewing a trial court's denial of a motion to suppress, the appellate court looks at the totality of the evidence presented at the suppression hearing. Unless the trial court's conclusions are not supported by the evidence or there exists a clear abuse of discretion, an appellate court should not overturn the trial court's ruling. In other words, the appellate court will give the trial court's determination great weight and will not set aside the trial court's ruling unless clearly mandated by a preponderance of the evidence.

a. The Stop: Probable Cause.
"Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed or was committing a crime." State v. Brisban, 00-3437, p. 5 (La.2/26/02), 809 So.2d 923, 927, citing Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). See also La.Code Crim.P. art. 213.
La.R.S. 14:100.1 provides in part:
No person shall willfully obstruct the free, convenient and normal use of any public sidewalk, street, highway, bridge, alley, road, or other passageway, or the entrance, corridor or passage of any public building, structure, water craft or ferry, by impeding, hindering, stifling, retarding or restraining traffic or passage thereon or therein.
At the hearing on motion to suppress, Corporal Johnson testified regarding Defendant's actions as follows:

*467 Q So, now you approach him. Does he... get out of your way, or you just-how did that happen?
A We pulled several feetwe had stopped the unit several feet in front of him. He was still standing in the roadway. We asked him to come to the unit, and that's when he approached us.
Q Okay. Now, you said he's still standing, and I think earlier you said he was walking. Which one
A I think he might have stopped when we got close to him, when we started stopping the unit.
Corporal Johnson testified that he did not recall seeing any other vehicles on the street that day. Corporal Hooper testified regarding traffic conditions as follows:
Q Okay. Was any traffic, vehicular traffic, on the roadway?
A [T]here's always traffic on that road. It's a busy street. He was obstructing our ... traffic at the time, therefore he was obstructing a road.
Q Okay. But I'm talking about when you saw him in the road, was there any other cars, trucks, on the road?
A I couldn't tell you. I couldn'tI couldn't recall, sir.
Q You don't recall?
A I don't recall, I just
Q If I suggested to you that Officer Johnson stated there was no other vehicular traffic on the roadway, would you have any cause to not believe that?
A I couldn't recall, sir. I was focused on Mr. Malveaux standing in the middle of the roadway,
....
A I was focused on Mr. Malveaux standing in the roadway, obstructing our traffic, as we were
Q Obstructing your traffic?
A coming.
Q Okay. But you didn't observe him obstructing any other traffic?
A I couldn't recall, sir. He was obstructing the roadway.
Corporal Hooper also stated that "we decided he was obstructing our traffic ... so we decided to stop him."
The record indicates that Defendant was walking down the middle of the street and stopped as the officers slowed their patrol car. Because there is no testimony regarding the layout of Martha Street, it cannot be determined from the record whether that street is a one, two, or four lane roadway, or whether Defendant was walking down the center line of the street or in the middle of the lane in which the officers were traveling. Additionally, the officers did not testify that they could not have continued driving in their lane of travel because of Defendant's presence on the street. Based on the evidence presented at the hearing, we cannot say that there was probable cause to arrest Defendant for obstructing a public passage under La.R.S. 14:100.1.

b. The Stop: Reasonable Suspicion and Flight.
Both the Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. Law enforcement officers illegally detaining a person may constitute an unreasonable seizure. [State v.] Lewis, 97-1244 [(La.App. 3 Cir. 3/6/98)]; 728 So.2d 1[, writ denied, 98-977 (La.9/18/98), 724 So.2d 752]. However, the Louisiana Code of Criminal Procedure authorizes investigatory stops in certain circumstances. Specifically, La. Code Crim.P. art. 215.1(A) provides:

*468 A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
An investigatory stop is no less a restriction on a person's liberty of movement than an arrest. State v. Senegal, 95-0796 (La.App. 3 Cir. 12/6/95); 664 So.2d 832. Yet, an investigatory stop is considered less of an intrusion because it is briefer than an arrest. Id. Consequently, unlike an arrest which requires probable cause to believe that a crime has been committed, an investigatory stop may be made under a more relaxed reasonable suspicion standard. [State v.] Purvis, 96-787 [(La.App. 3 Cir. 12/11/96)]; 684 So.2d 567.
An evaluation of whether a police officer had a reasonable basis for an investigatory stop requires looking objectively at the totality of the circumstances known to the officer at the time of the challenged action. [State v.] Bargeman, 98-617 [(La.App. 3 Cir. 10/28/98)]; 721 So.2d 964 [,writ denied, 99-33 (La.5/28/99); 743 So.2d 658]. A law enforcement officer cannot stop a person upon a generalized suspicion or hunch. Lewis, 97-1244; 728 So.2d 1; see also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Instead, the officer must be able to articulate objective facts to support his suspicion of criminal activity. Id. Thereafter, deference must be given to the reasonable inferences drawn by the law enforcement officer in light of his experience. Id.

Thomas, 02-471 at pp. 4-5; 829 So.2d at 1140.
However, as the supreme court explained in State v. Lewis, 00-3136, pp. 3-4 (La.4/26/02), 815 So.2d 818, 820-821, cert. denied, 537 U.S. 922, 123 S.Ct. 312, 154 L.Ed.2d 211 (2002):
It is settled that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen...." Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)(White, J.); see also Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991)("[T]he proposition that police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions ... is by no means novel; it has been endorsed by the Court any number of times.") (citations omitted). An officer's request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority indicating to the person that he or she is not free to leave. Royer, 460 U.S. at 501, 103 S.Ct. at 1326; see also I.N.S. v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984)("[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure."); 4 Wayne R. LaFave, Search and Seizure, § 9.3(a), pp. 100-101 (3rd ed. 1996)("The critical factor is whether the policeman, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner which would be perceived as a nonoffensive contact if it occurred between two ordinary citizens.") (footnotes omitted).
When the police lack reasonable suspicion to detain an individual by force or by submission to a show of official authority, *469 see California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the individual "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." Royer, 460 U.S. at 498, 103 S.Ct. at 1324. However, the decision in Illinois v. Wardlow, 528 U.S. 119, 124-25, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), makes clear that flight is not the equivalent of a mere refusal to cooperate for purposes of the Fourth Amendment:
Headlong flightwhenever it occursis the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists....
Such a holding is entirely consistent with our decision in [Royer], where we held that when an officer without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. And any `refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.' [Bostick, 501 U.S. at 437, 111 S.Ct. at 2387]. But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not `going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.
In Lewis, 815 So.2d 818, the court concluded that, with or without reasonable suspicion, the officers had a right to approach the defendant and his companion and ask questions. The request without a greater show of authority did not turn the encounter into a forcible detention and did not bring on the defendant's flight.
In State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989, the supreme court further explained: "Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened." In Benjamin, the defendant began to run upon seeing the marked police unit, holding his waistband as if he were supporting a weapon or contraband. These facts were sufficient to raise a reasonable suspicion that the defendant either was engaging or was about to engage in criminal activity and, thus, justified a stop.
At the time Corporal Johnson encountered Defendant, the officer had no information that Defendant was distributing drugs, was acting suspiciously, or was intoxicated. Corporal Hooper commented that the "area is a very high drug traffic area." However, no basis for his opinion was given. Both officers testified that Defendant appeared to be nervous and was looking around in all directions when they approached him.
Corporal Johnson testified that he had no reason to believe Defendant had contraband or a weapon in his left hand and that he did not fear for his safety when he encountered Defendant. When asked why Defendant was chased, Corporal Johnson responded: "We chased him because, like I said, ... we had stopped him for the *470 traffic obstruction, and we were trying to find out what was going on, plus the fact that ... we believed he had something in his hand." According to Corporal Hooper, "My purpose was to advise him that he was obstructing a roadway, and to ask him to get off to the side of the roadway, after we found out what he was doing in the roadway to begin with. That area is a very high drug traffic area, I mean."
It is clear that Corporals Johnson and Hooper were allowed to ask Defendant for identification and to question him about his actions. Even assuming the chase initiated by the officers indicated an actual stop was imminent, the totality of the circumstances known to the officers at the time, including Defendant's nervousness, their belief that Defendant was clutching something in his hand, and Defendant's unprovoked flight, gave rise to reasonable suspicion for an investigatory stop. See Lewis, 815 So.2d 818.

c. The Search.
[E]ven after a lawful stop, a police officer is not always justified in frisking a suspect for weapons. See State v. Hunter, 375 So.2d 99 (La.1979). A weapons frisk is justified under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27, 88 S.Ct. at 1883 (1968). It is sufficient that an officer establish a "substantial possibility" of danger by pointing to particular facts which support such a reasonable inference. State v. Bolden, 380 So.2d 40, 42 (La.1980), cert. denied, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980). La.Code Crim.P. art. 215.1(B) provides statutory authority for an officer conducting an investigatory stop to conduct a pat down search of the outer clothing for dangerous weapons and, as the courts have noted, in many situations the circumstances that justify the investigatory stop also warrant the frisk. State v. Mingo, 93-827 (La.App. 1 Cir. 6/24/94), 638 So.2d 1209.
Lewis, 97-1244 at p. 10; 728 So.2d at 6.
"When a police lawfully pats down a suspect's outer clothing and feels an object `whose contour or mass makes its identity immediately apparent,' `if the object is contraband,' it can be lawfully seized without a warrant." State v. Howard, 00-2405, p. 10 (La.App. 4 Cir. 4/11/01), 787 So.2d 404, 411, writ denied, 01-1381 (La.4/19/02), 813 So.2d 417, quoting Minnesota v. Dickerson, 508 U.S. 366, 369-70, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). In Howard, the court upheld the warrantless seizure of "hard objects" felt in the defendant's pockets pursuant to the "plain feel" exception, where the officer had much experience in narcotics investigation and was acting pursuant to a citizen complaint that the defendant had participated in illegal activity.
Corporal Hooper testified that he became afraid that Defendant might have a weapon when Defendant reached for his left pants pocket while the officers attempted to subdue him. This justified the officers conducting a limited pat down of Defendant's outer clothing for weapons. Testimony indicated the officers reached into the Defendant's pocket. However, there was no testimony that the officers detected a weapon or what they believed to be contraband in Defendant's left pocket. As noted, the suspect material consisted of fragments or particles that were not identifiable by touch. Accordingly, any intrusion into Defendant's left pocket went beyond the scope of that allowed by Terry, and the evidence seized was inadmissible at trial.
"If evidence was derived from an unreasonable search or seizure, the *471 proper remedy is exclusion of the evidence from trial." Benjamin, 97-3065 at p. 3; 722 So.2d at 989, citing Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).
Because the trial court's conclusion to the contrary was not supported by the evidence, Defendant's motion to suppress should have been granted.

Decree
For the above reasons, Defendant's conviction and sentence are vacated, and the matter is remanded for further proceedings.

REVERSED AND REMANDED.