# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 05-794


**STATE OF LOUISIANA**

**VERSUS**

**JASON L. SLAYDON**


\* \* \* \* \* \* \* \* \* \*


APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-696-03
HONORABLE STUART S. KAY, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*


Court composed of Marc T. Amy, Michael G. Sullivan, and Billy Howard Ezell, Judges.


**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.**


**David W. Burton**
**District Attorney - 36th Judicial District Court**
**Richard Alan Morton**
**Assistant District Attorney**
**P. O. Box 99**
**DeRidder, LA 70634**
**(337) 463-5578**
**Counsel for Appellee**
**State of Louisiana**

**Leslie R. Leavoy, Jr.**
**Attorney at Law**
**P. O. Box 1055**
**DeRidder, LA 70634**
**(377) 462-6051**
**Counsel for Defendant/Appellant**
**Jason L. Slaydon**

**EZELL, JUDGE**.

On December 16, 2003, the State filed a bill of information charging the Defendant, Jason Slaydon, and his brother, Billy J. Slaydon, with simple burglary and unauthorized use of a motor vehicle. The Defendant and his brother both entered not guilty pleas at their arraignment on December 16, 2003. The State subsequently filed an amended bill of information on January 26, 2004, charging the Defendant and his brother with one count of simple burglary in violation of La.R.S. 14:62, one count of unauthorized use of a motor vehicle in violation of La.R.S. 14:68.4, and one count of possession of methamphetamine in violation of La.R.S. 40:967(C). Pursuant to the amended bill of information, the Defendant was re-arraigned on February 24, 2004, and entered pleas of not guilty.

The Defendant subsequently filed a motion to suppress any evidence procured in a search of his vehicle at the time of his arrest. On September 30, 2004, the trial court conducted a hearing and denied the motion, finding that the arresting officer's discovery of drug paraphernalia in the Defendant's pockets during a search incident to his arrest gave the officers the authority to search his vehicle.

On November 15, 2004, the Defendant entered a Crosby Plea[1] to the charge of attempted possession of methamphetamine and the State, in turn, dismissed the charges for burglary and unauthorized use of a motor vehicle. In association with his Crosby Plea, the Defendant reserved the right to challenge the trial court's denial of his motion to suppress.

The trial court held a sentencing hearing on January 3, 2005, and subsequently sentenced the Defendant on January 10, 2005, to serve thirty months at hard labor, consecutive to any sentence previously imposed. The trial court suspended the thirty-

---

[1]Pursuant to *State v. Crosby*, 338 So.2d 584 (La.1976), an accused may enter a guilty plea but reserve his right to appellate review of pre-plea assignments of error.

1

month sentence, and placed the Defendant on three years of supervised probation subject to the following conditions:

> 1) $1,500.00 fine plus costs and fees on a pay plan set by the defendant's probation officer;

> 2) $50.00 monthly probation supervision fee;

> 3) $5.00 monthly assessment fee, as required by La.Code Crim.P. art. 895.1(F);

> 4) Prohibition from the use of drugs or alcohol;

> 5) Random drug and alcohol screens at the defendant's expense;

> 6) Substance and alcohol abuse evaluation, with the evaluator's recommendations becoming conditions of probation;

> 7) "90 days in the Beauregard Parish Jail with credit for time served prior to the imposition of this sentence. Further, this jail time shall be credited toward the 60-month . . . sentence herein imposed and suspended should that suspension subsequently be vacated as a result of a subsequent probation revocation." The trial court allowed the defendant to serve the ninety days after the completion of his college degree in May/June 2005.

The trial court denied the Defendant's subsequent motion for reconsideration of the sentence. The Defendant now appeals, alleging that the trial court's denial of his motion to suppress was erroneous. The Defendant also asserts that the trial court erred in requiring him to spend ninety days in the Beauregard Parish Jail as a condition of his probation; and that the ninety-day period is constitutionally excessive.

We find that the assigned errors lack merit.

## STATEMENT OF FACTS

The following facts were adduced at the hearing on the motion to suppress. On the evening of October 18, 2003, Lieutenant Greg Hill and Officer Reese Martin, both of the DeRidder City Police Department, responded to a call at Hickory Creek Trailer Park ("Hickory Creek"). Daniel Hernandez had placed the call, alleging that the

2

Defendant and his brother, Billy Slaydon, were attempting to steal his car. Mr. Hernandez testified that he had previously rented a trailer at Hickory Creek and had left a Ford Taurus there but that he returned occasionally to check on it. Mr. Hernandez stated that he happened to be visiting with a friend who lived in Hickory Creek on October 18, 2003, when he looked up and saw someone driving his vehicle down the street.

Mr. Hernandez testified that he stopped the vehicle, which was being driven by the Defendant. Mr. Hernandez stated that he and the Defendant argued over the ownership of the vehicle and that he called the police. He said that the Defendant then left the scene in a vehicle which Billy Slaydon had been driving behind Mr. Hernandez's vehicle.

Billy Slaydon testified that he and his brother returned to their uncle's home briefly and then decided to leave Hickory Creek. They had to pass the scene to exit Hickory Creek, and they stopped as they passed Mr. Hernandez and the vehicle still in the roadway. The police officers were also arriving on the scene at that time.

Lieutenant Hill testified that the Defendant told them that his uncle rented a unit there and wanted to dispose of an abandoned vehicle on his rental property. Lieutenant Hill stated that he read the Defendant his Miranda rights immediately because he realized the possibility that a crime was occurring, and the Defendant did not provide additional details until after he had been advised of his Miranda rights. Lieutenant Hill also stated that the Defendant told him that he was taking the vehicle to the sheriff's office. However, Mr. Hernandez told him that the Defendant was attempting to steal the vehicle and had damaged it in the process of gaining entry and starting it. Lieutenant Hill testified that, after speaking to both the Defendant and Mr. Hernandez, he arrested the Defendant for criminal damage to property, vehicular

3

trespassing, and unauthorized use of a moveable.

After the Defendant had been arrested and handcuffed, Officer Martin searched his person and found a pen cap in his pocket that contained a substance the officers believed to be narcotics. Officer Martin testified that he then placed the Defendant in the back of his patrol vehicle. After his arrest, Officer Hill and another officer searched the Defendant's vehicle, wherein they discovered methamphetamine in a smokeless tobacco can and three additional pen caps which contained a substance the officers believed to be narcotics.

Before we discuss the merits of the case, we do find one error patent worth consideration. The trial court failed to establish a payment schedule for the fine and costs ordered as conditions of probation. When the trial court imposed these fines and costs, it ordered that they be paid "on a pay plan set by [the Defendant's] probation officer." "This court has found error patent when the trial court fails to establish a payment plan for fees ordered as conditions of probation." *State v. Theriot*, 04-897, 04-898, p. 7 (La.App. 3 Cir. 2/9/05), 893 So.2d 1016, 1021. The court remands the case to the trial court with instructions to establish a payment plan for the fine and costs ordered as conditions of the Defendant's probation.

## ASSIGNMENT OF ERROR NUMBER ONE

For his first assignment of error, the Defendant alleges that the trial court erred in denying his motion to suppress the evidence found in searches of his person and his vehicle. He argues in his appellate brief that Officer Martin did not have probable cause to put his hand into his pocket during the search of his person, because the officer should have determined that the pen cap in his pocket was not a weapon. The Defendant continues in his appellate brief, stating that "[i]n that the police officer was not justified in putting his hand into the defendant's pocket, finding what the officer

4

characterized to be drug paraphernalia, then the further warrantless and nonconsensual search of the vehicle was without probable cause."

We begin by noting that at trial the Defendant did not challenge the evidence found during the search of his person incident to his arrest. In his motion to suppress filed with the trial court, the Defendant stated that the officers did not have probable cause to search his private vehicle and that, "[a]ccordingly, any and all evidence on which the law enforcement officers based the defendant's arrest . . . should be suppressed." At the suppression hearing, the Defendant's counsel stated the following:

> Mr. Slaydon was arrested, and the evidence is clear. He was arrested, handcuffed, and put in the police unit. We understand that the officer once he arrested him and put him in handcuffs had the right to search his person. And whatever they found, that is what they found.
>
> I am not seeking to suppress that particular thing. What I am seeking to suppress is anything found in the car because there was no warrant.

We find that because the Defendant did not raise the issue of validity of the search of his person incident to his arrest as a ground for suppression below, he may not raise it for the first time on appeal. *See State v. McLeod*, 03-50 (La.App. 3 Cir. 4/30/03), 843 So.2d 1268; *State v. Jackson*, 04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907. However, we will consider the Defendant's assertion that officers did not have probable cause to conduct a search of his vehicle.

In *State v. Anthony*, 98-406, pp. 19-20 (La. 4/11/00), 776 So.2d 376, 389-90 (alteration in original), the Louisiana Supreme Court stated:

> A custodial arrest must be supported by probable cause, *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and as to any evidence seized pursuant to that arrest, the State bears the burden of establishing its admissibility. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). A warrantless arrest in a public place is not "illegal" if based on probable cause. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Generally,

5

probable cause for a warrantless arrest exists when facts and circumstances known to an arresting officer are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *State v. Scales*, 93-2003, p. 6 (La.5/22/95), 655 So.2d 1326, 1331; *State v. Marks*, 337 So.2d 1177, 1181 (La.1976); La.Code Crim. Proc. art. 213. Moreover, a warrantless search of a person and the immediate area within such person's control is justified following a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State v. Wilson*, 467 So.2d 503, 515-18 (La.1985).

This Court has made clear that "the determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes but turns on a completely objective evaluation of *all* of [the] circumstances known to the officer at the time of his challenged action." *State v. Kalie*, 96-2650, p. 1 (La.9/19/97), 699 So.2d 879, 880 (emphasis in original) (citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) and *State v. Wilkens*, 364 So.2d 934, 937 (La.1978)).

The United States Supreme Court has clearly stated that once a lawful arrest has been made, a warrantless search of the arrestee's person and of the area within his immediate control is permissible in order to remove any weapons and to prevent evidence from being destroyed. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, (1969); *see State v. Thomas*, 02-471 (La.App. 3 Cir. 10/30/02), 829 So.2d 1137, *writ denied*, 02-2920 (La. 4/21/03), 841 So.2d 789.

An appellate court must consider the totality of the evidence presented at the suppression hearing when reviewing a trial court's ruling on a motion to suppress. *State v. Bargeman*, 98-617 (La.App. 3 Cir. 10/28/98), 721 So.2d 964, *writ denied*, 99-33 (La. 5/28/99), 743 So.2d 658. "The appellate court should not overturn a trial court's ruling, unless the trial court's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion." *Id.* at 967.

Lieutenant Hill and Officer Martin testified at the suppression hearing regarding the circumstances that were known to them at the time of the Defendant's arrest. Lieutenant Hill stated that as he pulled onto the scene, he observed the Defendant exit from the passenger side of a stationary vehicle and his brother from the driver's side. He testified that he first spoke with Mr. Hernandez, who alleged that the Defendant had damaged and attempted to steal his vehicle. Lieutenant Hill stated that the Defendant told him that he had been taking the car from the property, but that his uncle had advised him that the vehicle had been abandoned. Lieutenant Hill testified that the Defendant, having already been advised of his Miranda rights, told him the vehicle had been in the park for several months and that he was going to drive it to the sheriff's office.

Lieutenant Hill stated that the Defendant was arrested for criminal damage to property, vehicular trespassing, and unauthorized use of a moveable. He said that the Defendant was searched after he was arrested and that the pen cap was found in his pocket. Lieutenant Hill stated that the search of the Defendant and the subsequent search of his vehicle were both performed as searches incident to the Defendant's arrest, because the officers had seen the Defendant exit the passenger's side of the vehicle. Lieutenant Hill described the items found in the search of the vehicle, which included other pen tops with similar residue, as well as a smokeless tobacco container which contained methamphetamine. Lieutenant Hill stated that Billy Slaydon was arrested later.

Officer Martin also testified that as he approached the scene he saw the Defendant exit from the passenger's side of his vehicle. He stated that the Defendant told the officers that "his uncle had told him the car was abandoned and that he was taking the car to the sheriff's office for his uncle. His uncle asked him to remove it

7

from his trailer lot." Officer Martin testified that after he made those statements, the Defendant was arrested, and that Officer Martin searched the Defendant's person as he walked him to the patrol car and found the pen top with "some type of residue in it." He stated that after the Defendant was placed into the patrol vehicle, other officers searched his vehicle.

We find that based on the testimony provided by the officers at the suppression hearing, the circumstances known at the time the officers confronted the Defendant demonstrate that probable cause existed to arrest him. Accordingly, the pen top found on his person upon being taken into custody was properly seized as a result of the search incident to the Defendant's arrest.

However, the Defendant argued at the motion to suppress hearing that he had already been handcuffed and placed into a police vehicle when the officers searched his car. The Defendant's counsel stated that "[t]here is no reason for the exigency that the Courts allow a vehicle to be searched incident to arrest when somebody has dominion or control over it and might be able to destroy evidence or whatever."

The United States Supreme Court recently considered the scope of a search of the passenger compartment of a vehicle where the defendant was a "recent occupant" of a vehicle. *Thornton v. U.S.*, 541 U.S. 615, 124 S.Ct. 2127 (2004). In *Thornton*, an officer witnessed a driver acting suspiciously and ran a check of the car's license tags. As the officer drove toward the vehicle to pull it over, the driver pulled into a parking lot and exited his vehicle. After a subsequent consensual search of the driver's person revealed marijuana and crack cocaine, the officer searched the vehicle he had seen him get out of and found a gun therein. The defendant moved to suppress the gun, arguing that police were only authorized to search the passenger compartment of a vehicle incident to an arrest in situations where the officer had

8

initiated contact with an arrestee while he was still an occupant of the car. *See New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981). The *Thornton* court found that an officer who has determined probable cause to arrest a "recent occupant" of a vehicle is justified in searching the entire passenger compartment as an incident of that arrest to ensure their safety and to preserve evidence. *Thornton*, 124 S.Ct. 2127.

The Supreme Court has also considered the relevance of "exigent circumstances" to a vehicle search incident to arrest in *Pennsylvania v. Labron*, 518 U.S. 938, 116 S.Ct. 2485 (1996). In *Labron*, the Supreme Court reversed a state court's finding that required police to obtain a warrant for an automobile search unless exigent circumstances existed. The *Labron* Court noted that the "ready mobility" of an automobile had been recognized as a justification for a warrantless search where probable cause to conduct the search had been established. However, the Supreme Court additionally noted that it had recognized further justification in other cases which pointed to a decreased expectation of privacy in a vehicle due to its pervasive regulation. Therefore, the Supreme Court stated, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Id.* at 940.

In the instant matter, the trial judge reviewed *Labron* in his reasons for denying the Defendant's motion to suppress. The trial judge also considered *State v. Joseph*, 02-717 (La.App. 5 Cir. 6/27/03), 850 So.2d 1049, stating in relevant part:

> In this case the officers as a result of the search of the defendant's person at the time of the arrest recovered certain materials which raised their suspicion reasonably that drugs might be involved in that they found the cap which seemed to have the residue in it which the officer recognized as the same.
>
> That is almost identical to the situation in the Joseph case where the stop was originally a traffic stop during the course of the arrest. There was a discovery that the vehicles' plates were switched. There was a suspicion that the car had been perhaps stolen.

In the course of trying to determine the ownership of the vehicle, they entered the vehicle and found in plain view drugs. That precipitated a full search of the vehicle, allowing the officers to discover during the full search of the vehicle because of their reasonable suspicion that drugs were present. The officers did discover that drugs indeed were present in that vehicle.

It seems to me in this case, once the law officers in the search of the defendant, incident to his arrest in connection with the unauthorized use of the vehicle, discovered evidence which suggested that drugs were present; and they began the search of the vehicle that the drugs, which were found as an incident to that search, would not be subject to a motion to suppress.

The information before the Court today suggests that these items which were noticed by the officers and recognized to be items that customarily involve drugs and the residue indicated that drugs were present, gave the officers authority to proceed as they did in this case.

The items discovered were apparently not secreted but were in reasonably plain view; and for all of those reasons, the Court citing both the Joseph case and the Third Circuit case, Louisiana versus Thomas; as well as the Fifth Circuit Case, State versus Walker, which is cited as 853 So.2d, 61, [sic] which deals with the discovery in plain view of certain drug items.

All of these . . . authorities which relate to search incident to arrest as opposed to search incident to an investigatory stop would cause the Court to conclude that the Motion to Suppress should be denied.

Although the Defendant suggests that he no longer had control over his vehicle because he had been secured in the patrol vehicle at the time his own vehicle was searched, we find that the record does not indicate that the vehicle had been impounded at the time of the Defendant's arrest. The officers both stated that Billy Slaydon had not been arrested at the time the Defendant was placed into the patrol vehicle and that he was standing near the Defendant's vehicle prior to and during the officers' search of the vehicle. In this sense, the instant matter may be factually distinguishable from *Belton*, 453 U.S. 454, wherein each occupant had been arrested and/or secured at the time of the vehicle search.

10

Furthermore, we find that the officers had probable cause to believe that the vehicle contained contraband based on the drug paraphernalia they found during a lawful search of the Defendant's person performed as an incident of his arrest. Similar to *Thornton*, the officers in the instant matter both stated that they had seen the Defendant exit his vehicle as they pulled onto the scene. Consequently, the officers were warranted in searching the Defendant's vehicle incident to his arrest, and the trial court did not abuse its discretion in denying the Defendant's motion to suppress the evidence discovered in that search. This assignment has no merit.

## ASSIGNMENT OF ERROR NUMBER TWO

The Defendant alleges as his second assignment of error that his sentence was excessive, stating in his appellate brief that "[t]he Trial Court was wrong to require 90 days in the Beauregard Parish Jail as a condition of the sentence and probation imposed on Jason Slaydon." In support of his contention, the Defendant points out that he has sole custody of his children, is employed full-time, and is a first offender.

This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

11

*State v. Barling*, 00-1241, 01-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (alteration in original).

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

The record reflects that the Defendant pled guilty to one count of attempted possession of methamphetamine, in violation of La.R.S. 40:967(C) and La.R.S. 14:27. The maximum term of imprisonment thereunder is two and one-half years with or without hard labor and a fine of $2,500.00.[2] The Defendant received a sentence of thirty months at hard labor, which was suspended. He was placed on supervised probation with special conditions for three years. As one of these conditions, the defendant was ordered to serve ninety days in the Beauregard Parish Jail, although the trial judge allowed that time to be served after the Defendant received his college degree the following summer.

At the sentencing hearing, the trial judge stated the following:

---

[2] Louisiana Revised Statutes 40:967(C) states that the penalty for the possession of methamphetamine, a Schedule II drug, is imprisonment with or without hard labor for not more than five years and a possible fine. However, because the Defendant was convicted of attempted possession of methamphetamine, La.R.S. 14:27 also applies. Louisiana Revised Statutes 14:27(D)(3) states, in pertinent part, that the defendant "shall be . . . imprisoned . . . in the same manner as for the offense attempted; such . . . imprisonment shall not exceed . . . one-half of the longest term of imprisonment prescribed for the offense. . . ."

This sentence has been imposed after consideration of the presentence investigation report from the Louisiana Division of Probation and Parole dated December 21, 2004, and the information provided at your recent presentencing hearing.

Further, the sentence has been imposed after reviewing the record in this case. Particularly, the discovery provided by the State to the defense and the laboratory report and chemical analysis by the Southwest Louisiana Regional Crime Lab, dated November 19th, 2003, which along with your admission of guilt provides the Court with the factual basis for this conviction.

You appear before this Court as a first felony offender. Further, you have no prior misdemeanor convictions. Therefore, after considering your record and the facts and circumstances of this particular case, I am of the opinion that you may be successfully rehabilitated.

For this reason, I have provided the conditions of probation as stated above as a method of dealing with your apparent drug dependency. Failure to comply with these conditions will result in revocation of your suspended sentence and prison time.

I have considered your willingness to admit your wrongdoing in this case in imposing this sentence and the amount of the controlled substance in your possession at the time of arrest.

Further, I have taken into consideration your status as a single parent. For this reason, I will allow you to discharge your jail time during the summer after you have completed your degree program so that your children will not be displaced to other schools during the academic year while staying with others.

The trial court is accorded great discretion in imposing a sentence within the statutory limits. *State v. Kennerson*, 97-1682 (La.App. 3 Cir. 6/3/98), 715 So.2d 518. In providing the mitigating factors for his sentence, the trial judge stated that he considered the Defendant's criminal record and his ability to be rehabilitated. The trial judge stated that he felt that the Defendant had a substance abuse problem and that the conditions of his probation, including time in jail, were necessary to help the Defendant deal with that problem. Finally, although the Defendant suggests hardship due to his status as a single parent, the trial court attempted to minimize the ill-effects of the Defendant's incarceration on the children by allowing the Defendant to serve

13

that time during their summer vacation from school.

We find that the Defendant's ninety-day sentence to be served in a parish jail was at the low end of the sentencing range to which he was exposed. Therefore, we find that the trial court did not abuse its discretion in imposing incarceration for ninety days as a condition of this Defendant's probation and that this assignment lacks merit.

## CONCLUSION

The Defendant's conviction and sentence are affirmed. The case is remanded, however, and the trial court instructed to establish a payment schedule for the fines and costs ordered as conditions of the Defendant's probation.

**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS**