## NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**09-1500**

**STATE OF LOUISIANA**

**VERSUS**

**GEORGE EARL WHITE, JR.**

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT,
PARISH OF GRANT, NO. 08-079
HONORABLE WARREN D. WILLETT, DISTRICT JUDGE

**********

**J. DAVID PAINTER**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED.**

**Hon. James P. Lemoine, District Attorney**
**Thirty-Fifth Judicial District**
**P.O. Box 309**
**Colfax, LA 71417**
**Counsel for Appellee:**
    **State of Louisiana**

**George L. Higgins, III, Attorney at Law**
**P.O. Box 3370**
**Pineville, LA 71361**
**Counsel for Defendant/Appellant:**
    **George Earl White, Jr.**

**PAINTER, Judge.**

Following a plea pursuant to *State v. Crosby*, 338 So.2d 584 (La.1976), Defendant, George Earl White, Jr., was convicted of the charge of possession of cocaine with the intent to distribute and sentenced to ten years at hard labor, fined $10,000.00, and ordered to pay court costs. Defendant now appeals the denial of his motion to suppress and also argues that his sentence is excessive. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 6, 2008, Defendant was charged by bill of information with possession of cocaine with intent to distribute, a violation of La.R.S. 40:967(A).

A motion to suppress was filed by Defendant. At the hearing, Preston Durr, the Chief of Police of the City of Colfax, testified that on December 20, 2007, he was working with the U.S. Marshal Task Force. The marshals were in Colfax looking for Tredell Terrel Williams, a black male, who had an outstanding arrest warrant. Chief Durr testified an informant advised them that Williams was at Defendant's residence. Chief Durr explained that, as he went to Defendant's residence, he encountered a vehicle blocking the two-lane street in front of Defendant's residence. Chief Durr testified that a black male, later identified as Defendant, was "leaned in the car." Chief Durr explained that it was nighttime when he approached the location, and he testified, in pertinent part, that:

> I just eased up behind him because my lights was [sic] off trying to be undetected, and the subject saw me and I got out of the vehicle when he was walking away at a fast pace and I advised him to stop. He took off running, so I took off running, hollering at him several time [sic], while I chased him, to stop and he never would stop [sic].

Chief Durr further testified that during the chase, he did not know the identity of Defendant.

Chief Durr also testified that with the help of the U.S. Marshals, Defendant was caught three blocks from the initial location. When Chief Durr reached Defendant, the marshals had Defendant on the ground, and the Chief handcuffed him. Chief Durr explained that at this point, he recognized that Defendant was not the suspect wanted on the outstanding warrant. Chief Durr testified that he advised Defendant of his

1

*Miranda* rights and that he was under arrest for flight from an officer. Chief Durr testified that a search incident to the arrest was conducted and that a Crown Royal bag was found in Defendant's pocket. Inside the bag were "two large-sized cookies of crack cocaine."

Following the hearing and submission of briefs by the parties, the trial court denied the motion to suppress in written reasons, stating, in pertinent part:

**A. Officer Dunn had probable cause to stop the defendant.**

An arrest, whether made with or without a warrant, is lawful when based on probable cause. U.S. Const. Amend. 4; La. Const. Art. 1 § 5. Probable cause for a warrantless arrest sufficient to permit a warrantless search incident to arrest exists if the facts and circumstances known to the officer are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). *See*, also, La. C.Cr.P. art. 215.1, which recognizes the right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity. In this case, the defendant was leaning into a car that was obstructing the flow of traffic in violation of La. R.S. 14:100.1. The car was located in front of the home at which officials were advised that Tredell Williams was located. Thus, Chief Durr had the right - if not an obligation - to question Mr. White under La. C.Cr.P. art. 215.1 to ascertain whether he was Mr. Williams.[1] Additionally, Chief Durr had the right to assess the situation, including identifying the party leaning into an illegally parked vehicle. The circumstances gave Chief Durr probable cause to believe, at the very least, that the defendant had illegally obstructed the roadway in violation of La. R.S. 14:100.1.[2] Moreover, rather than cooperate with Chief Durr's efforts to investigate the scene, the defendant fled, thereby providing Chief Durr with probable cause to arrest the defendant for resisting an officer by flight under La. R.S. 14:108B(1)(a). Accordingly, the arrest of Mr. White was based upon probable cause that he had engaged in criminal conduct.

**B. Search of the defendant was proper.**

A defendant lawfully seized may be searched incident to his arrest. Particularly, in a search incident to a lawful arrest, an officer may search the suspect's person and as well as the area within his immediate control. *State v. Wright, supra.* As discussed above, the defendant's seizure was based upon probable cause that the defendant had engaged in criminal conduct, including, but not limited to, obstruction of roadway. That the defendant was arrested for flight from an officer, as versus obstruction of a roadway, does not invalidate the search conducted by the officers. Where the police have probably [sic] cause to effect a lawful custodial arrest, and conduct a search of the person incident to arrest, the fruits of that search may not be suppressed merely because the police did not intend to arrest the suspect for the offense for which probable cause existed. *State v. Sherman*, 05-0779 (La. 2006), 931 So.2d 286, 297. Therefore, search of the defendant's person subject to his lawful arrest was, therefore, proper under both federal and state constitutions. Given that the seizure and the search of the defendant

were proper, the contraband seized from the defendant's person should not be suppressed.

## Ruling

Based upon the forgoing facts, this Court finds that the warrantless seizure of the narcotics, incident to a lawful arrest of the defendant for flight from an officer, is legal. Therefore, use of the seized narcotics as evidence at trial is permitted. The defendant's Motion to Suppress is denied.

_____
[1] Mr. Durr did not identify the defendant until he was apprehended by United States Marshalls [sic].
[2] By leaning into the driver's window, Mr. White was a principal to the obstruction of the roadway.

On July 13, 2009, Defendant entered a *Crosby* plea to the charge of possession of cocaine with intent to distribute and reserved his right to seek appellate review of the denial of his motion to suppress. In exchange, the State agreed to recommend a fifteen year sentencing cap, to dismiss the misdemeanor charges in district court docket number 08-78, and to not file a habitual offender bill.

On August 13, 2009, Defendant was sentenced to ten years at hard labor, fined $10,000.00, and ordered to pay court costs.

## DISCUSSION

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

*Motion to Suppress*

Defendant first argues that the trial court erred in denying his motion to suppress when it found probable cause to arrest based upon Defendant's obstructing a public highway and resisting an officer by flight.

When a trial court rules on a defendant's motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a trial court's ruling, unless the trial court's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion. *State v. Burkhalter*, 428 So.2d 449 (La.1983), and *State v. Gaspard*, 96-1279 (La.App. 3 Cir. 2/11/98); 709 So.2d 213.

*State v. Cummings*, 07-1304, p. 8 (La.App. 3 Cir. 4/30/08), 983 So.2d 246, 251-52, *writ denied*, 08-1187 (La. 2/20/09), 1 So.3d 489 (quoting *State v. Bargeman*, 98-617 (La.App. 3 Cir. 10/28/98), 721 So.2d 964, *writ denied*, 99-33 (La. 5/28/99), 743 So.2d 658).

Louisiana Code of Criminal Procedure Article 201 provides:

> Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.

In *State v. Slaydon*, 05-794 (La.App. 3 Cir. 2/1/06), 921 So.2d 1199, this court explained, in pertinent part:

> In *State v. Anthony*, 98-406, pp. 19-20 (La.4/11/00), 776 So.2d 376, 389-90 (alteration in original), the Louisiana Supreme Court stated:
>
> > A custodial arrest must be supported by probable cause, *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and as to any evidence seized pursuant to that arrest, the State bears the burden of establishing its admissibility. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). A warrantless arrest in a public place is not "illegal" if based on probable cause. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Generally, probable cause for a warrantless arrest exists when facts and circumstances known to an arresting officer are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *State v. Scales*, 93-2003, p. 6 (La.5/22/95), 655 So.2d 1326, 1331; *State v. Marks*, 337 So.2d 1177, 1181 (La.1976); La.Code Crim. Proc. art. 213. Moreover, a warrantless search of a person and the immediate area within such person's control is justified following a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State v. Wilson*, 467 So.2d 503, 515-18 (La.1985).
> >
> > This Court has made clear that "the determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes but turns on a completely objective evaluation of all of [the] circumstances known to the officer at the time of his challenged action." *State v. Kalie*, 96-2650, p. 1 (La.9/19/97), 699 So.2d 879, 880 (emphasis in original) (citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) and *State v. Wilkens*, 364 So.2d 934, 937 (La.1978)).

*Id.* at 1204.

In *State v. Simms*, 571 So.2d 145 (La.1990), the court explained, in pertinent part:

> The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable cause, as the very name implies, deals with probabilities. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the available evidence supports a reasonable belief that the person to be arrested has committed a crime. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *State v. Rodrigue*, 437 So.2d 830 (La.1983). The determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. *State v. Ogden and Geraghty*, 391 So.2d 434 (La.1980).

*Id.* at 148-49.

Additionally, as noted by the trial court, in *State v. Sherman*, 05-779 pp. 17-18 (La. 4/4/06), 931 So.2d 286, 297, the court held: "Where the police have probable cause to effect a lawful custodial arrest, and conduct a search of that person incident to arrest, the fruits of that search may not be suppressed merely because the police did not intend to arrest the suspect for the offense for which probable cause existed."

*Obstruction of Public Street:*

Defendant argues that law enforcement believed the act of fleeing constituted probable cause to arrest and that at the hearing on the motion to suppress, the State attempted to justify law enforcement's action by claiming that Defendant was obstructing the road. Defendant points out that Chief Durr testified that he advised Defendant that he was under arrest for flight from an officer. Defendant explains that Chief Durr's testimony merely suggests that "the only thing the Defendant was observed doing was leaning into the car that was stopped in the roadway." Defendant continues, stating that Chief Durr recalled the brake lights of the vehicle were illuminated which indicates that there was a driver of the vehicle and that Defendant was not the driver. Defendant asserts that the State's assertion that law enforcement had probable cause because Defendant was obstructing a public roadway is without merit.

5

The State counters that Defendant's standing in the middle of the road was clearly a violation of La.R.S. 14:100.1, as both a principal to the driver of the car blocking the street and in regard to his own position in the roadway. The State concludes that Chief Durr had "reasonable suspicion and probable cause to believe a crime was being committed by Mr. White upon the officer's initial observance of him standing in the middle of the road with the vehicle."

Additionally, in rebutting Defendant's assertion that the officer came up with the justification to arrest after the incident, the State points to *Kalie*, 699 So.2d at 880, where the court explained:

> [D]etermination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes but turns on a completely objective evaluation of all of circumstances known to the officer at the time of his challenged action. *Whren v. United States*, [517] U.S. [806], 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *State v. Wilkens*, 364 So.2d 934, 937 (La.1978).

Louisiana Revised Statutes 14:100.1 provides, in pertinent part:

> No person shall wilfully obstruct the free, convenient and normal use of any public sidewalk, street, highway, bridge, alley, road, or other passageway, or the entrance, corridor or passage of any public building, structure, water craft or ferry, by impeding, hindering, stifling, retarding or restraining traffic or passage thereon or therein.

Louisiana Revised Statutes 14:24 provides:

> All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

Chief Durr testified then when he drove up, he saw Defendant standing in the middle of the city street, leaning into the window of a vehicle parked in the middle of the street. He stated that at some point, he turned on his headlights. Chief Durr further explained that the vehicle was parked in the middle of the street which had two lanes. When asked if the vehicle was in a position to block both lanes of travel, Chief Durr responded: "That's correct." During his testimony, the following pertinent exchange occurred:

Q      Okay. Now, at the time you initially saw him, you described or, -- you indicated there was vehicle present?

6

A     That's correct.

Q     Do you remember what kind or what type of vehicle it was?

A     No, sir.

Q     Okay. Can you describe for me the - - where the vehicle was located in regard to the roadway?

A     Directly in the middle of the street. Directly in front of Mr. White's residence.

Q     And the vehicle - - could you tell if the break [sic] lights were on or could you tell?

A     Yeah. The break [sic] lights were on. It was not moving. It was sitting still.

Q     Okay. Could you have been able to get by that particular vehicle had you had the occasion to want to get around it?

A     Without going . . .

Q     Would you have had to drive off of the roadway?

A     Yeah. Without going through somebody's property, no.

Q     Okay. So, it completely obstructed the roadway?

A     That's correct.

On cross-examination, Chief Durr stated that there was no traffic when he pulled up.

In *State v. Barnard*, 37,032 (La.App. 2 Cir. 5/14/03), 847 So.2d 99, the defendant stopped his vehicle in the middle of his lane of traffic and, after one minute, the passenger exited the vehicle. The defendant then drove away. He was subsequently stopped by police. The officer testified that he saw the defendant stop and obstruct the public passage. The second circuit found that this was sufficient to establish probable cause for a traffic violation. The defendant argued that since no traffic was actually impeded, no crime was committed. The court stated that such argument concerning the interpretation of the criminal statute, even if correct, did not detract from the existence of probable cause for arrest. The court stated that "[w]hile we do not interpret the traffic statute so narrowly, the evidence indicates that Officer Dean had probable cause to make the traffic stop in this case." *Id*. at 102.

7

In *State v. Scott*, 561 So.2d 170 (La.App. 1 Cir.), *writ denied*, 566 So.2d 394 (La.1990), police noticed the defendant standing in the middle of the street conversing with another male. As police approached, one of the men signaled their arrival. The defendant's companion ran into a nearby grocery store and the defendant began to walk away. Police stopped the defendant and initiated an "informal conversation." *Id*. at 172. During a frisk for weapons, police found a .357 handgun. Upon being questioned, the defendant admitted that he had another gun on his person. The defendant was then arrested for a weapons charge. During a search incident to arrest, police found several baggies of suspected cocaine.

In its ruling, the second circuit stated:

> Although defendant characterizes his conduct as innocuous and innocent, his behavior was, in fact, sufficiently notorious to draw the attention of these patrolling officers, and, it likely constituted an illegal obstruction of a public street. *See* LSA-R.S. 14:100.1. In any event, by conversing in the middle of a street after dusk, defendant and his companion created a significant risk to themselves as well as to vehicular traffic. We note that, in any area of the city, such conduct could give rise to grounds for police officers to determine the reasons for the activity, to determine if assistance was necessary, or to request that the pedestrians leave the roadway to converse.

*Id*. at 173.

In this case, as in *Barnard*, 847 So.2d 99, and *Scott*, 561 So.2d 170, the officer testified that Defendant, along with the vehicle into which he was leaning, was obstructing both lanes of travel on a public street. Consequently, this court finds that the testimony given by Chief Durr at the motion to suppress hearing supports that there was probable cause to arrest Defendant, either individually or as a principal to the driver in the vehicle, for obstruction of a public street.

Defendant also asserts that suspicion of criminal activity is not established merely because he chose not to confer with law enforcement. Defendant argues that since he was not engaged in criminal activity, he was within his constitutional right to avoid contact with law enforcement because a citizen may avoid unlawful arrest.

The State counters that at the time Defendant fled from Chief Durr, Defendant "provided both reasonable suspicion and probable cause to believe a second crime was being committed."

At the time of the commission of the offense in 2007, La. R.S. 14:108, which was amended effective August 15, 2006, provided, in pertinent part:

> A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.
>
> B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
>
> > (a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
> >
> > (b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
> >
> > (c) Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.
> >
> > (d) Congregation with others on a public street and refusal to move on when ordered by the officer.

The introduction to Acts 2006, No.132, section 1, which amended La.R.S. 14:108, stated, in pertinent part:

> AN ACT to amend and reenact R.S. 14:108(A) and (B)(1)(c) relative to the crime of resisting an officer; to provide that resisting an officer making a lawful detention is an element of the crime of resisting an officer; and to provide for related matters.

In *State v. Manuel*, 06-486, p. 5 (La.App. 4 Cir. 11/21/06), 946 So.2d 245, 248, *writ denied*, 06-2981 (La. 9/14/07), 963 So.2d 994, the court explained, in pertinent part:

> [T]he version of La. R.S. 14:108 was amended by Act 132, Acts 2006 to add "lawful detention" to paragraph A and to paragraph B(1)(c). Prior to the 2006 amendment, the statute did not include resisting

9

"detention" as part of the offense. Arguably, by adding lawful detention to the resisting arrest statute, a person now has the right to "resist" an unlawful detention just as he can an illegal arrest; if he can be charged for resisting lawful detention the inference is that he may resist unlawful detention.

Louisiana Revised Statute 14:108, as amended, made it a criminal offense for a person being lawfully detained by an officer to resist.

In *State v. Malveaux*, 03-276 (La.App. 3 Cir. 6/4/03), 852 So.2d 463, this court explained, in pertinent part:

> Both the Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. Law enforcement officers illegally detaining a person may constitute an unreasonable seizure. [*State v.*] *Lewis*, 97-1244 [(La.App. 3 Cir. 3/6/98)]; 728 So.2d 1[, *writ denied*, 98-977 (La.9/18/98), 724 So.2d 752]. However, the Louisiana Code of Criminal Procedure authorizes investigatory stops in certain circumstances. Specifically, La.Code Crim.P. art. 215.1(A) provides:
>
>> A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
>
> An investigatory stop is no less a restriction on a person's liberty of movement than an arrest. *State v. Senegal*, 95-0796 (La.App. 3 Cir. 12/6/95); 664 So.2d 832. Yet, an investigatory stop is considered less of an intrusion because it is briefer than an arrest. *Id.* Consequently, unlike an arrest which requires probable cause to believe that a crime has been committed, an investigatory stop may be made under a more relaxed reasonable suspicion standard. [*State v.*] *Purvis*, 96-787 [(La.App. 3 Cir. 12/11/96)]; 684 So.2d 567.
>
> An evaluation of whether a police officer had a reasonable basis for an investigatory stop requires looking objectively at the totality of the circumstances known to the officer at the time of the challenged action. [*State v.*] *Bargeman*, 98-617 [(La.App. 3 Cir. 10/28/98)]; 721 So.2d 964 [, *writ denied*, 99-33 (La.5/28/99); 743 So.2d 658]. A law enforcement officer cannot stop a person upon a generalized suspicion or hunch. *Lewis*, 97-1244; 728 So.2d 1; *see also Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Instead, the officer must be able to articulate objective facts to support his suspicion of criminal activity. *Id.* Thereafter, deference must be given to the reasonable inferences drawn by the law enforcement officer in light of his experience. *Id.*

> *Thomas*, 02-471 at pp. 4-5; 829 So.2d at 1140.

*Id.* at 467-68.

10

In *State v. Corry*, 610 So.2d 142 (La.App. 5 Cir. 1992), the court explained, in pertinent part:

> When the officer making the stop knows a crime has been committed, he has only to determine whether the additional trustworthy information justifies a man of ordinary caution to suspect the detained person of the offense. *State v. Bickham*, 404 So.2d 929 (La.1981).

*Id.* at 145.

The unrebutted testimony at the hearing on the motion to suppress indicates that Chief Durr received information from an informant that Tredell Williams, a black male, for whom there was an outstanding warrant, was at Defendant's residence. When he arrived at Defendant's residence, Chief Durr saw a black male in front of the residence leaning into a window of a vehicle which was obstructing the roadway, and Chief Durr was initially unable to identify the male. This court finds that Chief Durr articulated objective facts to support his suspicion of criminal activity to initiate an investigatory stop of Defendant. *See State v. Thomas*, 02-471 (La.App. 3 Cir. 10/30/02), 829 So.2d 1137, *writ denied*, 02-2920 (La. 4/21/03), 841 So.2d 789. Therefore, Chief Durr had reasonable suspicion to lawfully detain Defendant, and when he attempted to do so, Defendant fled. Consequently, we find that the record before this court reflects that Chief Durr had probable cause to arrest Defendant for a violation of La.R.S. 14:108.

## *Excessiveness of Sentence*

Defendant asserts the trial court failed to consider and articulate the appropriate mitigating factors in sentencing and that, as a result, the trial court imposed an excessive sentence.

Louisiana Code of Criminal Procedure Article 881.2 (2) provides that "The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea."

In *State v. Young*, 96-195 (La. 10/15/96), 680 So.2d 1171, the court held that La.Code Crim.P. art. 881.2(A)(2) applied to plea agreements involving both specific sentences and sentencing caps.

11

In this case, the State and Defendant agreed to a sentencing cap of fifteen years, and the trial court imposed a ten year sentence. Consequently, Defendant is precluded from seeking review of his sentence; thus, this assignment of error is precluded from review.

## DECREE

For all of the foregoing reasons, we find no error in the trial court's denial of the motion to suppress and find that the sentence imposed is not excessive. Therefore, we affirm the defendant's conviction and sentence.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2-16.3.